Opinion
 

 CROSKEY, J.
 

 Diversified Gypsum Corporation (Diversified)
 
 [1]
 
 appeals from the judgment of the superior court dismissing with prejudice Diversified’s action for breach of contract and related causes of action against defendants Perlite Plastering Company, Inc. (Perlite), Moran Construction Company (Moran) and the National Union Fire Insurance Company of Pittsburgh, Pa. (National Union). Dismissal was ordered on the ground that Diversified did not carry its burden of proof of showing substantial compliance with the Contractors’ State License Law (Bus. & Prof. Code, § 7000 et seq. (hereafter, the Law)).
 
 [2]
 

 We conclude substantial evidence supported the trial court’s finding that Diversified was unlicensed as a result of the negligence of its vice-president. The trial court also correctly found that the vice-president’s negligence precluded a finding that Diversified substantially complied with the Law. We therefore affirm the judgment.
 

 Factual and Procedural Background
 

 Diversified was formed in 1991 by Keith Gasman, Jr., Susan Johnson and James H. Johnson. Susan Johnson was the president of Diversified; James Johnson and Gasman, Jr., were its vice-presidents. Diversified anticipated doing substantial subcontract work for defendant Perlite, a company operated by Gasman’s father, Keith Gasman, Sr., and Jerry David.
 

 James Johnson held drywall (C-9) and painting and decorating (C-33) specialty licenses and owned another firm for which he was the responsible managing officer (RMO), pursuant to the requirements of section 7068,
 
 *174
 
 subdivision (b), which governs the manner in which the various forms of business organization may be licensed as contractors. (See Discussion, pt. 1,
 
 post.)
 
 However, at the advice of Gasman, Sr., Diversified did not apply for specialty licenses designating Johnson as its RMO. Instead, Diversified applied for, and obtained, a class B general contractor’s license through Melvin Hector, a long-time employee of Perlite, who came to work for Diversified as its foreman and responsible managing employee (RME) upon Diversified’s incorporation. Diversified’s class B license was issued on September 24, 1991.
 

 Hector worked for Diversified until June 2, 1992, when Johnson either fired Hector, as Hector understood matters, or suggested that Hector take a long-term leave to deal with certain health and family problems, as Johnson understood matters. Hector then went to work for other companies. However, Johnson, claiming to believe that Hector had only gone on a long-term leave, did not notify the Board or take steps to replace Hector with another RME or RMO.
 

 Shortly after Hector’s departure from Diversified, Diversified commenced work under a subcontract with Perlite to install interior drywall in a new library on the campus of Pasadena City College. Defendant Moran was the general contractor for the Pasadena City College Library Project (the Project). Diversified’s work on the Project was scheduled for completion on November 25, 1992. However, as a result of numerous delays, the work was not completed until September 9, 1993. Diversified blamed Perlite for the delays and so, on December 20,1993, filed suit against Perlite and the other defendants for breach of contract, breach of third party beneficiary contract, quantum meruit, negligence, and recovery against the payment bonds of Perlite and Moran. Diversified claimed in excess of $800,000 in damages.
 

 The case proceeded to a bifurcated trial. The first issue to be tried was whether Diversified held a valid contractor’s license at the time it performed the work sued upon or, if not, whether Diversified was nevertheless in substantial compliance with the licensing requirement. A three-day hearing on this issue was held on July 21, July 24 and July 25, 1993. Thereafter, the trial court issued a statement of decision, in which it made the following findings of fact and conclusions of law.
 

 First, the class B general contractor’s license which Diversified held at least until June 2, 1994, did not authorize it to enter into its contract with Perlite, because the contract was for work which did not include at least three trades, as required by Board Regulation 834, subdivision (b). (See Discussion, pt. 2,
 
 post.)
 
 Moreover, Diversified’s RME, Hector, was no
 
 *175
 
 longer employed by Diversified when it commenced work on the Project. Thus, Diversified did not have a contractor’s license of any kind at the time it was performing the work sued upon in this action, although Diversified’s vice-president, Johnson, held specialty licenses which would have authorized the work if held by Diversified, and Johnson exercised direct supervision and control of Diversified’s work on the Project.
 

 Since Diversified did not have a license which authorized its work on the Project, section 7031 precluded Diversified from recovering against the defendants unless it proved substantial compliance with the licensing requirements. (See Discussion, pt. 1,
 
 post.)
 
 The trial court observed that Diversified would be found in substantial compliance with the Law if the issue were still governed by the judicial doctrine of substantial compliance as stated in
 
 Latipac, Inc.
 
 v.
 
 Superior Court
 
 (1966) 64 Cal.2d 278 [49 Cal.Rptr. 676, 411 P.2d 564] and
 
 Asdourian
 
 v.
 
 Araj
 
 (1985) 38 Cal.3d 276 [211 Cal.Rptr. 703, 696 P.2d 95]. However, the judicial doctrine had been superseded by statute. Hence, Diversified could recover only if it proved substantial compliance as defined in section 7031, subdivision (d), which, at the time the work was being performed, allowed an unlicensed contractor to recover on the contract if (1) the contractor was a duly licensed during any portion of the 90 days immediately preceding the performance of the contract sued upon; and (2) the contractor’s category of licensure would have authorized the performance of the contract; and (3) noncompliance with the licensure requirement either was the result of inadvertent clerical error, or was not the result of negligence of the contractor.
 

 The court found the first of the statutory requirements was fulfilled, in that Diversified, through Hector, had a contractor’s license within the 90 days before commencement of its work on the Project. However, the second requirement was not fulfilled, because Hector’s general contractor’s license did not authorize the specialty work which was the subject of the subcontract with Perlite. In addition, the court found that Diversified’s failure to have a license while performing the work was due to its own negligence, in that Johnson allowed Hector to remain on what Johnson erroneously believed was a long-term leave for 16 months without inquiring whether Hector planned to return. The court observed that if Johnson had inquired, he would have learned that Hector believed he had been fired and had gone to work for another firm.
 

 It was alleged by the defendants that Johnson had formed Diversified, a union firm, in order to avoid union interference with his existing, nonunion, drywall firm, Johnwall Interiors, and that Johnson intentionally refrained from designating himself as the RMO for Diversified, in order to disguise as
 
 *176
 
 much as possible the connection between Diversified and Johnwall. However, the court expressly rejected this allegation. The court found that Johnson did not act in bad faith, did not intentionally fail to notify the Board of Hector’s departure, and did not intentionally fail to substitute himself or another as Diversified’s qualifier. Rather, the court found that Johnson “was supervising jobs for two companies, working long hours, dealing with change orders and other immediate problems, and did not think about whether he was acting as a responsible managing officer or not and licensing formalities.” The court also found that Perlite did not act in bad faith or engage in a conspiracy to obtain free services from Diversified by “setting up” Diversified’s licensing difficulties, although Perlite’s officer, Gasman, Sr., had advised Johnson and Gasman, Jr., that Hector’s general contractor’s license would qualify Diversified’s work for Perlite, and had promised to review the scope of Diversified’s work to assure that it included three unrelated trades.
 

 Based upon the foregoing factual findings, the court concluded that Diversified did not prove substantial compliance with the Law as defined in section 7031, subdivision (d). The court therefore entered a judgment of dismissal of Diversified’s action against the defendants. This timely appeal followed.
 

 Contentions
 

 Diversified contends that: (1) in view of the appellate decision in
 
 Home Depot, U.S.A., Inc.
 
 v.
 
 Contractors’ State License Bd.
 
 (1996) 41 Cal.App.4th 1592 [49 Cal.Rptr.2d 302], issued after the entry of judgment in this case, the trial court was incorrect in finding that Diversified’s license, which Diversified duly held within 90 days before commencing work on the Project, would not have authorized Diversified’s work on the Project; (2) Diversified’s failure to have a valid license when performing work on the Project was not owing to its negligence; and (3) Diversified at all times carried out the legislative purpose of the Law and thus was in substantial compliance with it.
 

 Discussion
 

 1.
 
 Overview of the Applicable Statutes
 

 The Law provides a comprehensive scheme governing contractors doing business in California. It reflects a strong public policy in favor of protecting the public against unscrupulous and incompetent contracting work. As our Supreme Court recently noted, “The purpose of the licensing
 
 *177
 
 law is to protect the public from incompetence and dishonesty in those who provide building and construction services. [Citation.] The licensing requirements provide minimal assurance that all persons offering such services in California have the requisite still and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business.”
 
 (Hydrotech Systems, Ltd.
 
 v.
 
 Oasis Waterpark
 
 (1991) 52 Cal.3d 988, 995 [277 Cal.Rptr. 517, 803 P.2d 370]; see also
 
 Home Depot, U.S.A., Inc.
 
 v.
 
 Contractors' State License Bd., supra,
 
 41 Cal.App.4th at p. 1598.)
 

 If a corporation applies for a contractor’s license, the corporation must qualify through either an RMO or an RME, who is qualified for the licensing classification for which the corporation is applying. (§ 7068, subd. (b)(3).) The RMO or RME (qualifier) must be a bona fide officer or employee of the corporation and must be actively engaged in the work covered by the license. (§ 7068, subd. (d).) The qualifier must exercise direct supervision over the work for which the license is issued to the extent necessary to secure full compliance with the provisions of the Law. (§7068.1.) If a corporation’s qualifier leaves the corporation’s employ, the corporation or the qualifier must so notify the Registrar of Contractors in writing, and the corporation must replace the qualifier within 90 days. (§ 7068.2.) To replace a qualifier, the corporation must file a new application designating the new qualifier. If a corporation’s qualifier is not replaced within 90 days, the corporation’s license is automatically suspended, or the specialty classification is removed. (§ 7068.2.)
 

 The Law is enforced primarily through the provisions of section 7031, which provides that “Except as provided in subdivision (d), no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract,
 
 regardless of the merits of the cause of action brought by the person. . .
 
 .” (§ 7031, subd. (a) (hereafter, § 7031(a)); italics added.) At all times relevant to this action, section 7031, subdivision (d) (hereafter, § 7031(d)) provided that "... a court may determine that there has been substantial compliance with licensure requirements, for purposes of this section, if it is shown at an evidentiary hearing that the person was a duly licensed contractor during any portion of the 90 days immediately preceding the performance of the act or contract for which compensation is sought, that the person’s category of licensure would have authorized the performance of that act or contract, and that noncompliance with the
 
 *178
 
 licensure requirement was the result of (1) inadvertent clerical error, or (2) other error or delay not caused by the negligence of the person. . . "
 
 [3]
 

 2.
 
 The Court’s Finding That Diversified’s Noncompliance With the Licensure Requirement Was Caused by Its Negligence Was Sufficient to Support the Judgment
 

 The primary focus of Diversified’s argument in its briefs was that Board Regulation 834, subdivision (b), upon which the trial court relied in finding that Diversified’s license, even if current and valid, would not have authorized Diversified’s work on the Project, has been declared invalid.
 
 [4]
 
 As we shall explain, this argument, while evidently correct, is unavailing in view of the court’s additional finding that Diversified’s failure to have a valid license while performing work on the Project was caused by Diversified’s negligence.
 

 Diversified correctly points out that, after the entry of judgment in this case, Board Regulation 834, subdivision (b) was found by an appellate court to be invalid and void as inconsistent with section 7057, which defines the term, “general building contractor.”
 
 (Home Depot, U.S.A., Inc.
 
 v.
 
 Contractors’ State License Bd., supra,
 
 41 Cal.App.4th at p. 1607.) This being the case, the class B general contractor’s license which Diversified held within 90 days before commencing work on the Project arguably would
 
 *179
 
 have authorized its work on the project, and the court’s finding to the contrary was arguably incorrect. However, under section 7031 as enacted in 1993, when the within action was commenced, a contractor who was not duly licensed could maintain an action on a contract only if the contractor satisfied
 
 all
 
 of the following three requirements: (1) the contractor was duly licensed contractor during any portion of the 90 days immediately preceding the performance of the act or contract for which compensation is sought;
 
 and
 
 (2) the contractor’s category of licensure would have authorized the performance of that act or contract;
 
 and
 
 (3) noncompliance with the licensure requirement was the result of (a) inadvertent clerical error, or (b) other error or delay not caused by the negligence of the person. Here, the trial court found that Diversified’s noncompliance was caused by its negligence, in that Johnson, Diversified’s vice-president, reasonably could and should have determined that Hector had gone to work for another company and should have secured a substitute qualifier. Diversified has not presented argument or evidence which overcomes this factual finding.
 

 Diversified argues in its reply brief that “it is readily apparent that Mr. Johnson was not negligent.” However, this argument amounts to an attack on the sufficiency of the evidence to support the trial court’s factual finding of negligence. It is a fundamental principle of appellate review that the factual findings of the trial court are presumed correct.
 
 (Nestle
 
 v.
 
 City of Santa Monica
 
 (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480];
 
 Heard
 
 v.
 
 Lockheed Missiles and Space Co.
 
 (1996) 44 Cal.App.4th 1735, 1747 [52 Cal.Rptr.2d 620].) It is equally fundamental that a party challenging a judgment has the burden of showing reversible error by an adequate record.
 
 (Ballard
 
 v.
 
 Uribe
 
 (1986) 41 Cal.3d 564, 574-575 [224 Cal.Rptr. 664, 715 P.2d 624];
 
 Bennett
 
 v.
 
 McCall
 
 (1993) 19 Cal.App.4th 122, 127 [23 Cal.Rptr.2d 268].) In the absence of a contrary showing in the record, all presumptions in favor of the trial court’s action will be made by the appellate court. If any matters could have been presented to the court below which would have supported its findings and judgment, it will be presumed that such matters were presented.
 
 (Bennett
 
 v.
 
 McCall, supra,
 
 19 Cal.App.4th at p. 127.) Here, the case has been submitted for review on the basis of a joint appendix, the functional equivalent of a clerk’s transcript. When an appeal is submitted on a record of this kind, the reviewing court
 
 conclusively
 
 presumes the evidence was ample to sustain the trial court’s factual findings. The only question is whether the findings support the judgment.
 
 (National Secretarial Service, Inc.
 
 v.
 
 Froehlich
 
 (1989) 210 Cal.App.3d 510, 521-522 [258 Cal.Rptr. 506].)
 

 Based upon the record presented to us, we cannot second-guess the trial court’s finding that Diversified’s failure to have a valid license was
 
 *180
 
 caused by its negligence. That finding alone was sufficient to support the judgment.
 

 3.
 
 Section 7031(d), Which Provides the Only Exceptions to the Licensure Requirement in Section 7031(a), Exempts From the Licensure Requirement Only Those Unlicensed Contractors Whose Unlicensed Status Is the Result of Circumstances Beyond Their Control.
 

 Diversified argues that it should not be denied recovery, because it at all times carried out the legislative purposes of the Law, inasmuch as Johnson, who actually supervised Diversified’s work on the Project was at all times a licensed drywall contractor. This argument is essentially a restatement of the judicial doctrine of substantial compliance, as articulated in
 
 Asdourian
 
 v.
 
 Araj, supra,
 
 38 Cal.3d 276 and
 
 Latipac, Inc.
 
 v.
 
 Superior Court, supra,
 
 64 Cal.2d 278, in which our Supreme Court reasoned that “ ‘[i]n view of the severity of [the sanction provided in section 7031] and the forfeitures which it necessarily entails, our decisions record our reluctance to construe [section 7031] more broadly than requisite to the achievement of its manifest purpose. We have not insisted on literal compliance in the situation in which the party seeking to escape his obligation has received the full protection which the statute contemplates.’ [Citation.] Instead, this court has employed the doctrine of ‘substantial compliance’ to avoid the harsh consequences of strict application of section 7031.”
 
 (Asdourian
 
 v.
 
 Araj, supra,
 
 38 Cal.3d at pp. 282-283, quoting from
 
 Latipac, Inc.
 
 v.
 
 Superior Court, supra,
 
 64 Cal.2d at pp. 279-280.) However, as was noted by the trial court, the Legislature expressly rejected the judicial doctrine of substantial compliance in 1989, when it amended section 7031 to provide that “[t]he judicial doctrine of substantial compliance shall not apply to this section.” (Stats. 1989, ch. 368, § 1, p. 1509.) The Legislature has since further amended the statute to provide for a limited exception to the licensure requirement. (See fin. 3,
 
 ante.) At
 
 all times relevant to this action, the statutory exception applied if and only if (1) the contractor was duly licensed within 90 days before commencing the work sued upon;
 
 and
 
 (2) the license was one that would authorize the work;
 
 and
 
 (3) noncompliance during performance of the work was not the result of the contractor’s negligence. Unless
 
 all
 
 of requirements stated in section 7031(d) are fulfilled,
 
 “[r]egardless of the equities,
 
 section 7031 bars all actions, however they are characterized, which effectively seek ‘compensation’ for illegal unlicensed contract work.”
 
 (Hydrotech Systems, Ltd.
 
 v.
 
 Oasis Waterpark, supra,
 
 52 Cal.3d at p. 997, italics added.)
 

 Diversified nevertheless argues that (1) Diversified should not be denied recovery against Perlite, because Perlite was at all times aware of Diversified’s licensure status; (2) Diversified should not be denied recovery,
 
 *181
 
 because Johnson relied upon the advice of Perlite’s manager in connection with its license; and (3) the Legislature provided for a more lenient exception to the licensure requirement in the 1994 amendment to section 7031 (see fn. 3,
 
 ante),
 
 and the currently enacted exception should be applied. These arguments are unavailing. The Supreme Court has held that section 7031 applies even where the person for whom the work was performed knew the contractor was unlicensed.
 
 (Hydrotech Systems, Ltd.
 
 v.
 
 Oasis Waterpark, supra,
 
 52 Cal.3d at p. 997.) The Supreme Court has also held that a contractor may not plead reliance upon another person in determining what is required under the Law; unlicensed contractors are held to knowledge of the Law’s requirements.
 
 (Id.
 
 at p. 999, fn. 7; see also
 
 K &K Services, Inc.
 
 v.
 
 City of Irwindale
 
 (1996) 47 Cal.App.4th 818, 827 [54 Cal.Rptr.2d 836].) Diversified’s argument that the 1994 amendment to section 7031(d) should apply in this case has been foreclosed by the Legislature. As amended in 1994, the statute includes the express provision that “[t]he exceptions to the prohibition against the application of the judicial doctrine of substantial compliance found in subdivision (d) shall apply to all contracts entered into on or after January 1, 1992, and to all actions or arbitrations arising therefrom, except that the amendments to subdivisions (d) and (e) enacted during the 1994 portion of the 1993-1994 Regular Session of the Legislature shall not apply to ... [^0 (1) any legal action or arbitration commenced prior to January 1, 1995, regardless of the date on which the parties entered into the contract. . . .” (§7031, subd. (e)(1).) The within action was commenced on December 20, 1993, and is therefore governed by the 1991 version of the statute.
 

 Finally, Diversified argues that the conduct of Johnson, which caused Diversified to be unlicensed, arguably constituted excusable neglect, inasmuch as the trial court found that Johnson “was supervising jobs for two companies, working long hours, dealing with change orders and other immediate problems, and did not think about whether he was acting as a responsible managing officer or not and licensing formalities.” Diversified thus argues that the case should be remanded for a determination of whether its failure to have a license was the result of excusable neglect, and whether Diversified should consequently be found in substantial compliance with the licensure requirement pursuant to section 7031(d).
 

 Diversified contends the trial court committed an error of law by evaluating Johnson’s conduct under ordinary negligence standards and contends that, when the Legislature amended section 7031(d) in 1991, it could not have intended to disqualify from application of the substantial compliance doctrine every contractor who was unlicensed owing to negligence as ordinarily defined in tort law, that is, “the failure to use ordinary or reasonable
 
 *182
 
 care,” or “that care which persons of ordinary prudence would use in order to avoid injury to themselves or others under circumstances similar to those shown by the evidence.” (BAJI No. 3.10.) Diversified cites the well-established principle that a statute should not be given a construction which renders one of the statute’s provisions nugatory
 
 (Shoemaker
 
 v.
 
 Myers
 
 (1990) 52 Cal.3d 1, 22 [276 Cal.Rptr. 303, 801 P.2d 1054, 20 A.L.R.5th 1016];
 
 City of Huntington Park
 
 v.
 
 Superior Court
 
 (1995) 34 Cal.App.4th 1293, 1300 [41 Cal.Rptr.2d 68]) and argues that section 7031(d)’s exception to the licensure requirement would be rendered nugatory if construed to apply only in the absence of ordinary negligence. This is so, Diversified argues, because the consequences of acting as a contractor without being licensed are so severe that any person of ordinary prudence would use
 
 extraordinary
 
 care to assure that he or she was licensed before undertaking work requiring a contractor’s license; thus, even extremely minor lapses of diligence in maintaining licensure would be “negligent” under ordinary negligence standards. That being the case, Diversified argues, the exception to the licensure requirement for “other error or delay not caused by the negligence of the person” would be rendered a nullity if the “negligence” referred to were negligence as ordinarily understood. To avoid such a result, Diversified argues that section 7031(d) must be construed to allow an exception to the licensure requirement where a contractor is unlicensed owing to conduct or inaction which amounts to excusable neglect. (Cf. Code Civ. Proc., § 473, subd. (b);
 
 Elston
 
 v.
 
 City of Turlock
 
 (1985) 38 Cal.3d 227, 234-235 [211 Cal.Rptr. 416, 695 P.2d 713].)
 
 [5]
 

 We have independently reviewed the legislative history of the 1991 amendment to section 7031, to determine whether it offers any support to Diversified’s argument. It does not. Indeed, the legislative history of the amendment strongly supports the contrary view—that the Legislature intended to create only an extremely narrow exception to the licensure requirement, which would apply only where a contractor was without a license owing to circumstances truly beyond his control.
 

 The bill which led to the 1991 amendment of section 7031, Assembly Bill No. 1382 (1991-1992 Reg. Sess.), was sponsored by the Southern California Contractor’s Association in response to the 1989 amendment to section 7031. (Assem. Com. on Consumer Protection, Governmental Efficiency and Economic Development, Rep. on Assem. Bill No. 1382 (1991-1992 Reg.
 
 *183
 
 Sess.) as proposed to be amended May 8,1991.) The 1989 amendment of the statute, as we observed above, abolished the judicial doctrine of substantial compliance. (Stats. 1989, ch. 368, § 1, p. 1509.) It appears that even the sponsoring organization did not urge application of the substantial compliance doctrine in situations other than those in which an unlicensed contractor was essentially without fault. According to the Report of the Assembly Committee on Consumer Protection, Governmental Efficiency and Economic Development prepared for a May 8, 1991 hearing on Assembly Bill No. 1382, the sponsoring organization believed that “in the limited circumstance where a person lacks licensure
 
 due to an error beyond his or her control,
 
 it is only fair to authorize the court to apply the doctrine of ‘substantial compliance.’ . . .” (Assem. Com. on Consumer Protection, Governmental Efficiency and Economic Development, Rep. on Assem. Bill No. 1382, (1991-1992 Reg. Sess.) as proposed to be amended May 8, 1991, italics added.) A report of the Senate Committee on Business and Professions, prepared for a June 24, 1991, hearing on the bill stated that the sponsoring organization intended for the bill to “ensure that a contractor’s ability to operate as a licensed contractor is not jeopardized because of a technical error or oversight by the contractor.” (Sen. Com. on Business and Professions Rep. on Assem. Bill No. 1382 (1991-1992 Reg. Sess.) as amended May 15, 1991.)
 

 As originally introduced, Assembly Bill No. 1382 proposed to amend section 143, not section 7031. (Assem. Bill No. 1382 (1991-1992 Reg. Sess.) § 1.) Section 143, which was enacted in 1990 (Stats. 1990, ch. 1207, § 1.5, p. 5045), provides that no person engaged in
 
 any
 
 business or profession requiring a license under the Business and Professions Code may bring an action, or recover in law or equity for unlicensed work. (§ 143, subd. (a).) Like section 7031 as amended in 1989, section 143 provided, and still provides, that the judicial doctrine of substantial compliance does not apply. (§ 143, subd. (b).) In its original version, Assembly Bill No. 1382 proposed full restoration of the substantial compliance doctrine through deletion of subdivision (b) of section 143. (Assem. Bill No. 1382 (1991-1992 Reg. Sess.) § 1.) On April 29, 1991, the bill was amended to avoid a conflict between the generally applicable section 143 and section 7031, which applies only to contractors. (See Assem. Com. on Consumer Protection, Governmental Efficiency and Economic Development, Rep. on Assem. Bill No. 1382 (1991-1992 Reg. Sess.) as proposed to be amended Apr. 10, 1991.) After the April 29 amendment, the bill proposed to amend section 7031, rather than section 143, and also proposed only a
 
 limited
 
 restoration of the substantial compliance doctrine. Under the April 29 amendment, the bill would have authorized application of the substantial compliance doctrine if it were proven at an evidentiary hearing that a contractor was unlicensed as a result of “(1) inadvertent clerical error, (2)
 
 excusable delay,
 
 or (3) other error or delay not caused by the
 
 active
 
 negligence of the person.” (Assem. Amend, to Assem. Bill No. 1382 (1991-1992 Reg. Sess.) Apr. 29, 1991, italics added.)
 

 
 *184
 
 Considered together, the “excusable delay” and “other error not caused by the [contractor’s] active negligence,” which would have justified application of the substantial compliance doctrine under Assembly Bill No. 1382 as amended on April 29, 1991, describe conduct that is substantially equivalent to the kind of minor negligence which Diversified argues should not disqualify an unlicensed contractor from recovering in a lawsuit. Thus, Diversified’s argument would certainly be correct if Assembly Bill No. 1382 had been enacted in the form it had on April 29, 1991. However, the bill was-subsequently amended to delete the references to “excusable delay” and “active negligence” (Assem. Amend, to Assem. Bill No. 1382 (1991-1992 Reg. Sess.), May 15, 1991), indicating that the Legislature expressly considered, and expressly rejected, a rule that would have exempted minor lapses of diligence from the strict application of section 7031(a).
 

 We next turn to Diversified’s argument that section 7031(d)’s exception to the licensure requirement will be rendered null if not construed to apply in cases of minor neglect. That argument is not entirely accurate. Contrary to Diversified’s argument, it is possible to imagine situations in which nonlicensure would not be attributable to a contractor’s negligence. For example, a contractor whose license was about to expire might mail a timely renewal application and fee, and thereafter begin work on a new project, assuming there would be no problem with the application and the renewal would be duly processed. If the renewal application were lost in the mail, or if, for any number of imaginable reasons beyond the contractor’s control, the application were not processed until after the original license period expired and after the contractor completed work on the project, the contractor might be unlicensed while performing the work. In this circumstance, the contractor’s unlicensed status would not be the result of the contractor’s negligence, for many kinds of construction contracts are capable of being completed before sufficient time would pass to put a reasonably prudent contractor on notice that something is awry with his or her renewal application and to raise a duty of inquiry. Thus, if the person employing the contractor failed to pay for the contractor’s work, the contractor would be entitled to bring an action on the contract pursuant to the 1991 version of section 7031(d) if the statute’s other requirements were met. While situations of this kind are unlikely to occur often, they are nevertheless a palpable possibility. The statutory exception to the licensure requirement is not rendered
 
 null
 
 merely because it applies only to circumstances that are rare.
 
 [6]
 

 For all of the foregoing reasons, there is no basis for applying the doctrine of substantial compliance under the facts of this case. We are not unmindful
 
 *185
 
 of the evident harshness of this result. However, the Legislature provided in the 1991 amendment to section 7031 that, except as provided in section 7031(d), section 7031(a) should apply “regardless of the merits of the cause of action” brought by an unlicensed contractor. (Stats. 1991, ch. 632, § 1.) The Legislature has also expressly provided in the current version of section 7031 that the 1994 amendments to subdivision (d) shall not apply to actions, including this one, filed before January 1, 1995. (§ 7031(d).) We may not contravene requirements enacted by the Legislature, nor may we construe those requirements in a manner contrary to the clearly expressed intent of the Legislature. The Supreme Court has also reasoned that “the deterrent purpose of section 7031 outweighs any harshness in a particular case.”
 
 (Hydrotech Systems, Ltd.
 
 v.
 
 Oasis Waterpark, supra,
 
 52 Cal.3d at p. 997.) We are bound by this reasoning.
 
 (Auto Equity Sales, Inc.
 
 v.
 
 Superior Court
 
 (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) The trial court’s judgment thus may not be disturbed.
 

 Disposition
 

 The judgment is affirmed. Costs on appeal are awarded to the defendants.
 

 Klein, P. J., and Aldrich, J., concurred.
 

 Appellant’s petition for review by the Supreme Court was denied June 18, 1997.
 

 [1]
 

 The appeal is actually brought by Construction Financial, LLC, Diversified’s assignee. However, since the assignee merely stands in Diversified’s shoes, Diversified shall be referred to in its own name throughout this opinion, as if still a party to the action.
 

 [2]
 

 Unless otherwise noted, further statutory references are to the Business and Professions Code. Contractors’ State License Board Regulations (Cal. Code Regs., tit. 16, §§ 810-887.) shall be referred to as Board Regulations. The Contractors’ State License Board shall be referred to as the Board.
 

 [3]
 

 Subdivision (d) was added to section 7031 in 1989 and originally eliminated the substantial compliance doctrine entirely, providing in full that “[t]he judicial doctrine of substantial compliance shall not apply to this section.” (Stats. 1989, ch. 368, § 1, p. 1509.) The subdivision was amended in 1991 to read in pertinent part as quoted in the text. (Stats. 1991, ch. 632, § 1.)
 

 Section 7031(d) was again amended in 1994 and now provides in pertinent part that “. . . the court may determine that there has been substantial compliance with licensure requirements under this section if it is shown at an evidentiary hearing that the person who engaged in the business or acted in the capacity of a contractor (1) had been duly licensed as a contractor in this state prior to the performance of the act or contract, (2) acted reasonably and in good faith to maintain proper licensure, and (3) did not know or reasonably should not have known that he or she was not duly licensed.” (Stats. 1994, ch. 550, § 1.)
 

 The 1991 version of section 7031(d) applies to contracts entered into on or after January 1, 1992, and to actions or arbitrations which (1) arise from such contracts, and (2) were commenced before January 1, 1995, or were
 
 originally
 
 commenced before January 1, 1995, dismissed, and refiled after that date. The 1994 version of section 7031(d) applies to contracts entered into on or after January 1,1992 and actions or arbitrations which arise therefrom and were
 
 originally
 
 commenced on or after January 1, 1995.
 

 [4]
 

 Board Regulation 834, subdivision (b) reads as follows: “A licensee classified as a general building contractor, as defined in section 7057 of the Code, shall not take a prime contract (excluding framing or carpentry) unless it requires at least three unrelated building trades or crafts, or unless he/she holds the required specialty license(s). A general building contractor shall not take a subcontract (excluding framing or carpentry) involving less than three unrelated trades or crafts unless he/she holds the required specialty license(s).”
 

 [5]
 

 Diversified raised this argument for the first time at oral argument. However, we have exercised our discretion to consider it, despite the general rule disfavoring tardily raised contentions, as it presents a pure question of law. (Cf.
 
 San Francisco Unified School Dist.
 
 v.
 
 San Francisco Classroom Teachers Assn.
 
 (1990) 222 Cal.App.3d 146, 151, fn. 1 [272 Cal.Rptr. 38].)
 

 [6]
 

 By creating an exception to section 7031(a) which applies to a contractor who submits a timely application for renewal of his or her license, but does not receive the renewal until after the old license has expired, and who meets the additional criterion that the former license would have authorized the work sued upon, the Legislature created an exception to
 
 *185
 
 section 7031(a) that is substantially identical to an exemption to section 143, subdivision (a) (no recovery in law or equity for unlicensed work in
 
 any
 
 business or profession requiring a license) and section 143, subdivision (b) (substantial compliance doctrine does not apply), which is created by section 143, subdivision (c). The latter subdivision provides that section 143 “shall not apply to an act or contract that is considered to qualify as lawful practice of a licensed occupation or profession pursuant to Section 121.” Section 121 provides that “[n]o licensee who has complied with the provisions of this code relating to the renewal of his or her license prior to expiration of such license shall be deemed to be engaged illegally in the practice of his or her business or profession during any period between such renewal and receipt of evidence of such renewal which may occur due to delay not the fault of the applicant.”