Filed 9/5/23  Sotelo v. Sotelo CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| RAUL SOTELO, | B322026 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. 19CHCV00458 |
| v. | |
| OFELIA SOTELO et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Stephen P. Pfahler, Judge.  Affirmed.

The Law Offices of J. Grant Kennedy and J. Grant Kennedy for Plaintiff and Appellant.

The Law Offices of R. Grace Rodriguez and R. Grace Rodriguez for Defendants and Respondents.

———————————

Raul Sotelo and his mother, Ofelia Sotelo, jointly purchased a house (the Property).[1]  Several years later, Raul quitclaimed his interest to Ofelia, who then granted an interest to Raul's siblings, Mayra Sotelo and David Sotelo.  Raul sued Ofelia, Mayra, and David (Defendants), alleging Ofelia fraudulently induced him to purchase the Property and quitclaim his interest in it.  After a bench trial, the court found Raul had met his burden of proof and was entitled to equitable relief.  The court, however, refused to grant Raul the entire Property, explaining it would be inequitable to do so given Defendants had made significant contributions to the Property over the years.  The court instead awarded Raul a 20 percent interest in the Property on the condition he help to contribute to it in the future.  On appeal, Raul primarily argues the court erred by giving Defendants credit for contributions related to funds they obtained by taking out loans on the Property.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Raul lost his foot in an accident he suffered as a child, for which he received a $250,000 settlement.  Raul was granted full access to the funds when he turned 18 years old.  Around that time, Raul and his parents purchased the Property for $190,000.  Raul used $110,000 from his settlement funds as the downpayment.  Raul and his parents took out an $80,000 loan to cover the remaining cost.  All three were listed on the title.

Initially, Raul and his parents lived in the house together.  Raul moved out in 1999, and his parents took over the mortgage payments.  Raul's parents divorced the next year, and his father executed a quitclaim deed in favor of Ofelia.  Raul moved back

---

[1]     For the sake of clarity, we refer to the parties by their first names.

2

into the house around the same time. The mother of Raul's child also lived in the house for several years.

In February 2002, Raul and Ofelia executed a deed of trust on the Property in exchange for a $77,340 loan. A few weeks later, Raul executed a quitclaim deed in favor of Ofelia. The recorded deed states the transfer was a bona fide gift. The next year, in May 2003, Ofelia took out a $169,000 loan on the Property.

In 2015, Ofelia transferred title to herself and two of Raul's siblings—Mayra and David—as joint tenants. The three secured a refinance loan for $193,000.

Raul sued Ofelia, Mayra, and David, asserting causes of action for cancellation of deeds, reformation of deeds, quiet title, declaratory relief, constructive relief, and fraudulent transfer. Raul alleged Ofelia pressured him into purchasing the Property and including her on the title. He also alleged that Ofelia fraudulently convinced him to execute the 2002 quitclaim deed by falsely promising to transfer the Property back to him whenever he wanted. According to Raul, Ofelia added the language "bona fide gift" to the deed after he had signed it and without his knowledge. Among other forms of relief, Raul asked the court to declare he was the sole owner of the Property.

The case proceeded to a bench trial. The trial was not reported, and Raul did not include in the appellate record a statement summarizing it. Therefore, we do not know precisely what evidence the parties presented at trial.

After the parties rested, the court issued a tentative statement of decision finding Raul was entitled to equitable relief. The court found "materially false statements made by [Raul's] mother, Defendant Ofelia Sotelo, caused him to allow

3

her to be put on the title to the Property in 1994, and that she made further false representations that induced him to sign the February 26, 2002, Quitclaim Deed giving Defendant Ofelia Sotelo full title and ownership to the Property."

Although the court found Raul had met his burden of proof, it concluded awarding him full ownership of the Property would be "manifestly unfair and unjust to the Defendants." The court explained Raul "was far from faultless in this case. In fact, Defendants have established [Raul's] unclean hands through his many missteps and own negligence." The court found that, while Raul "provided the initial deposit to purchase the subject Property, he pretty much did nothing thereafter regarding the Property." Ofelia "paid [Raul] back $80,000 from some of the money loaned to her for home repairs and other personal property purchases plus thereafter paid the monthly mortgage. [Raul] paid little or no mortgage payments for the past 15 years." The court also found Defendants paid "virtually all" the mortgage, insurance, and taxes for the past 15 years.

Based on these findings, the court awarded Raul a 20 percent interest in the Property.[2] The court arrived at the 20 percent figure as follows: It determined Raul's $110,000 downpayment was 58 percent of the total purchase price. It then determined Defendants had made mortgage payments amounting to 38 percent "of the total amount paid on the Property." The court subtracted Defendants' contribution percentage (38 percent) from Raul's contribution percentage

_____

[2]     The court noted it had asked the parties to address how to divide the Property in the event it found an all-or-nothing approach was not appropriate. Neither side addressed the issue, so the court fashioned a remedy on its own.

4

(58 percent), to arrive at Raul's interest (20 percent).  The court noted that, regardless of the math, "an award[ ] of a 20% ownership interest in the Property to [Raul] is fair and just" based on "all the evidence, the credibility of the witnesses, and the payments made in this case."  The court also noted that Raul would be "obligated to pay his proportionate share (20%) of the mortgage, insurance, and taxes" going forward.

Raul objected to the statement of decision.  Among other things, he argued the court improperly gave Ofelia credit for contributions related to money she obtained by taking out loans on the Property.  The court overruled Raul's objections and adopted its tentative statement of decision.  The court entered judgment, and Raul timely appealed.

## DISCUSSION

Raul argues the trial court's decision to award him only a 20 percent interest in the Property was the result of a "math error."  According to Raul, the court should have awarded him the entire Property and ordered Defendants to pay him $193,000 for the most recent loan they secured against the Property.

We review a trial court's grant or denial of equitable relief for an abuse of discretion.  (*Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749, 771.)  "Abuse of discretion is a deferential standard of review.  [Citation.]  Under this standard, a trial court's ruling 'will be sustained on review unless it falls outside the bounds of reason.'  [Citation.]  We could therefore disagree with the trial court's conclusion, but if the trial court's conclusion was a reasonable exercise of its discretion, we are not free to substitute our discretion for that of the trial court."  (*Avant! Corp. v. Superior Court* (2000) 79 Cal.App.4th 876, 881–882.)

5

Before turning to the merits of Raul's arguments, we must address the adequacy of the appellate record. It is a fundamental rule of appellate review that " '[a]ll intendments and presumptions are indulged to support [the judgment or order] on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court of Los Angeles County* (1970) 2 Cal.3d 557, 564.) To overcome this presumption, an appellant must provide a record that allows for meaningful review of the challenged order or judgment. (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187.)

Raul has not provided an adequate record in this case. As Raul correctly notes, we review the trial court's factual findings for substantial evidence. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873–874.) To perform such a review, we must examine all the evidence presented at trial. (*Ibid.*) It is impossible for us to do so, however, because Raul did not include in the appellate record a transcript of the trial or a statement summarizing it. (See *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132 [without a reporter's transcript of the trial proceedings, the appellants had "no basis upon which to argue that the evidence adduced at trial was insufficient to support the trial court's finding"].) Accordingly, we must simply presume that, had Raul provided an adequate record of trial, it would have supported the trial court's findings. (See *Construction Financial v. Perlite Plastering Co.* (1997) 53 Cal.App.4th 170, 179 ["If any matters could have been presented to the court below which would have supported its findings and judgment, it will be presumed that such matters were presented."].)

6

With that presumption in mind, we reject Raul's contention that the court's decision to award him a 20 percent interest in the Property rests on a "math error."  As we understand his argument, Raul contends the court erred by giving Defendants credit for making "mortgage payments" on the loans they secured against the Property.  According to Raul, the loans were "misappropriated tort[s]" against him, and Defendants' payments on the loans did not actually go towards purchasing the Property.  Therefore, he argues, the court should have ordered Defendants to compensate him for the loans, rather than give Defendants credit for making payments on them.  For the same reasons, he argues it was inequitable for the court to order that, going forward, he pay a proportionate share of the most recent loan for $193,000.

In making these arguments, Raul seems to assume that only Defendants benefited from the loans.  Such an assumption, however, is not well taken.  Indeed, it appears the court found Raul received $80,000 in cash from one of the loans.  Raul also overlooks the possibility that Defendants used the loans to benefit the Property, rather than themselves.  The court, in fact, noted that Ofelia took out a loan "for home repairs," and Raul's trial exhibits seem to indicate at least one loan was used to pay property taxes.[3]

---

[3]     Raul contends a trial exhibit shows Ofelia used one of the loans to pay off a personal debt to the City of San Francisco. In fact, the exhibit shows the loan was used to pay off a debt to the City of San Fernando, in which the Property is located. Presumably, the debt was related to property taxes.  Regardless, there is nothing even to suggest the loan was a personal debt.

7

Because Raul did not provide an adequate record of trial, we must presume Defendants presented evidence to support these findings. If so, the court reasonably could have found Raul benefited from the loans either directly in the form of cash, or indirectly through his use and enjoyment of the Property and the increase in value of his ownership interest. Given this possibility, we cannot say the court abused its discretion by giving Defendants credit for making payments on the loans. Nor can we say it was inequitable for the court to require that Raul contribute to repaying the most recent loan going forward.

Raul also seems to argue the court should not have given Defendants credit for repaying him $80,000, because the money came from a loan secured against the Property. He contends Defendants essentially were operating a "Ponzi Scheme," in which they "looted" his equity in the Property in order to repay the money they borrowed from him. It is not clear, however, why this was improper. Raul received $80,000 in cash without any obligation to repay it. And, to the extent the loan decreased Raul's equity in the Property, Defendants replenished it by making payments on the loan.

Raul raises several other issues in passing, which we also reject. At the outset, in making these arguments, Raul has not complied with the California Rules of Court. Under rule 8.204, each appellate brief must "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority." (Cal. Rules of Court, rule 8.204(a)(1)(B).) The argument section of Raul's opening brief on appeal contains a single heading entitled, "The trial court erroneously gave credit to defendants for money obtained by fraud instead of deducting

8

it."  To the extent Raul purports to raise other issues on appeal, we may consider them forfeited and reject them on that basis alone.  (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785; *Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830, fn. 4 [the failure to "head an argument" as required under the Rules of Court "constitutes a waiver"].)

Even if we were to overlook Raul's failure to comply with the Rules of Court, we would reject his cursory arguments.  Raul first argues the statement of decision must be corrected because it erroneously states Defendants took out a loan for $169,000, rather than $193,000.  Raul, however, did not raise this issue below, which forfeits it on appeal.  (See *Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1433 ["if an appellant wishes to argue a point on appeal, it must first make a record by raising the point in the trial court"].)  What's more, it appears Raul made the same purported mistake in his closing trial brief, on which we suspect the trial court relied.  In any event, Raul does not explain how the court's error was prejudicial or why it must be corrected.  Accordingly, he has not met his burden to show reversible error.

Raul next argues the court made inconsistent findings in its statement of decision.  According to Raul, the court's finding that Ofelia paid him " 'back $80,000 from some of the money loaned to her' " is the "exact opposite" of its finding that " 'Ofelia borrowed $80,000 by her own admission from [Raul] and then gave him $80,000 from his property to allegedly pay that back.' " It is not self-evident, and Raul does not meaningfully explain, how these findings are inconsistent.  In each, the court seemed to find Raul loaned Ofelia $80,000, which she later repaid.

9

We are similarly unpersuaded by Raul's contention that the court made inconsistent findings with respect to his contributions to the Property. According to Raul, the court erroneously found both that he rarely paid expenses related to the Property, and also that he paid for " 'substantial repairs' " and " 'one-half of the mortgage for a period of time.' " Contrary to Raul's contentions, these findings are not necessarily inconsistent. Indeed, it is possible Raul paid some expenses related to the Property, but he did so only rarely.

We also reject Raul's passing arguments related to the mortgage payments. Among other things, he contends there is no evidence showing he had a duty to pay the mortgage, the parties had an agreement that whoever lived in the house paid the mortgage, the mortgage payments were equivalent to rent, and he never intended to gift Defendants an interest in the Property in return for mortgage payments. Without a record of the evidence presented at trial, we cannot meaningfully evaluate any of these arguments. Instead, we must simply presume the record supports the court's findings.

## DISPOSITION

We affirm the judgment.  Defendants are awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P. J.

LAVIN, J.

11