Filed 8/31/16  Mastrodimos v. Kalikas CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| WILLIAM MASTRODIMOS, Individually and as Trustee, etc., | D068838 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2013-00053062-CU-NP-CTL) |
| ANTHONY KALIKAS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joel M. Pressman, Judge.  Affirmed.

Law Offices of Anthony E. Kalikas and Anthony E. Kalikas for Defendant and Appellant.

The Stone Law Group, Kenneth H. Stone and Scott G. Braden for Plaintiff and Respondent.

William Mastrodimos (Mastrodimos), individually and as trustee of a trust, filed an action against defendant Anthony Kalikas alleging a claim for malicious prosecution. He asserted Kalikas filed and prosecuted a lawsuit against Mastrodimos (the underlying

lawsuit) that Kalikas knew lacked merit and pursued with malice. The trial court found in favor of Mastrodimos, entered judgment against Kalikas and awarded $94,635 as compensatory damages. After his motion for new trial was denied, Kalikas timely appealed.

I

FACTUAL BACKGROUND[1]

A. Kalikas's Representation of John Mastrodimos (John)

*John's Interest in the Country Comfort Restaurant*

Sometime around 2001, John purchased the Country Comfort Restaurant in his own name. However, the restaurant was purchased with funds belonging to James and Youla Mastrodimos (individually James and Youla). The restaurant was placed in John's name only because James and Youla did not converse well in English, not because John was beneficial owner. Subsequently, Country Comfort Restaurant, Inc., was incorporated and the stock of the corporation was issued to James and Youla individually.

Around the same time as Country Comfort Restaurant, Inc. was incorporated, an attorney for James and Youla prepared the Country Comfort Trust. James and Youla were both the trustors and the beneficiaries of the trust. The assets of the trust were composed of James's and Youla's stock in Country Comfort Restaurant, Inc. The trust provided that on their deaths John would receive the assets of the trust.

---

[1]    Our factual recitation draws on the statement of decision in the present action, and bears little resemblance to Kalikas's version of the facts, because his characterization of the facts relies principally on a declaration he filed in the underlying action, and largely ignores the facts as found by the trial court in the present action.

Sometime in 2004, a stock purchase agreement was prepared providing for John to purchase 50 percent of the stock of Country Comfort Restaurant, Inc., for the sum of $235,000. That agreement was the subject of a note and pledge agreement in which John pledged the stock as security for the note in favor of the Country Comfort Trust. Mastrodimos acted as an escrow holder and took possession of John's share certificate pending payment by John of the amounts due on his promissory note.

*John's Failed Lakeside Restaurant and the Clapp Litigation*

In 2007 John embarked on another restaurant venture, the "Lakeside Steakhouse." John borrowed $200,000 against the equity in a family residence he shared with James and Youla, and used those funds to finance the purchase and initial operation of that restaurant. However, by late 2009 the Lakeside Steakhouse was not doing well and by September 2010 John and his partner (Mr. Vega) were in default for nonpayment of the Lakeside Steakhouse lease, resulting in closure of the restaurant. John was also being sued for breach of his personal guaranty of the Lakeside Steakhouse lease (the Clapp litigation).

Around the time the Lakeside Steakhouse closed, James (with the assistance of Mastrodimos) asked John either to bring current the payments on the $235,000 Promissory Note or convey his stock back to the Country Comfort Trust. John, who had been unable to make any payments on the note, endorsed his shares over to the Country Comfort Trust around September 16, 2010.

3

*Kalikas's Representation of John in the Clapp Litigation*

On October 29, 2010, John (accompanied by Mastrodimos) met with Kalikas, an attorney, regarding Kalikas's potential representation of John in connection with the Clapp litigation. Mastrodimos informed Kalikas that John was "broke." Kalikas did not inquire about John's financial situation, his ability to pay legal fees, what assets he owned, or what other obligations he had, and neither John nor Mastrodimos made any representations concerning those subjects. Kalikas did not provide any estimate as to the fees and costs that would be incurred in defending the Clapp litigation, other than to request an initial $5,000 retainer payment. On November 1, 2010, John returned to Kalikas's office, unaccompanied by Mastrodimos, and retained Kalikas as his attorney in the Clapp litigation.

During the course of his representation of John, Kalikas learned that (at the time he was retained) John did not own any real or personal property of significant value and that his liabilities exceeded his assets. Kalikas also learned, during the course of representing John, about John's acquisition of stock in the Country Comfort Restaurant, Inc., and that John had surrendered his stock back to the Country Comfort Trust in September 2010.

Kalikas also learned, during the course of his representation of John in the Clapp litigation, about John's acquisition and subsequent divestiture of an interest in a residence on Camino Sandoval. He learned, while representing John, that (1) John and his parents had purchased a residence on Camino Sandoval and the $350,000 down payment came from James and Youla; (2) title was taken to the property in the names of James and

4

Youla as to 50 percent and in John's name as to the other 50 percent, with the understanding John would make the monthly payments on the mortgage; (3) the original mortgage to purchase the property was $515,000 and in 2007 John borrowed another $200,000, secured by a second trust deed against the property in his name only; (4) that during the 10 to 12 months preceding July 2010 Mastrodimos loaned John approximately $30,000 that John used to make the mortgage payments; and (5) in July 2010, John transferred his interest in the property to the Mastrodimos-O'Byrne Family Trust. Kalikas learned (while representing John during the Clapp litigation) facts that demonstrated, at the time of the July 2010 transfer, John had exhausted any equity he held in the Camino Sandoval property before he conveyed his interest in the property to the Mastrodimos-O'Byrne Family Trust.[2]

B. The Underlying Lawsuit

Kalikas ultimately withdrew from representing John. He claimed John owed him a balance of over $18,000 in unpaid attorney's fees and costs. Kalikas subsequently filed the underlying action against John, and also named Mastrodimos as a defendant, alleging claims against Mastrodimos in his individual capacity and in his capacity as trustee for the Mastrodimos-O'Byrne Family Trust. Kalikas's claim for fraudulent conveyance,

---

[2] Kalikas learned the property was worth between $800,000 and $845,000 at the time of the transfer, rendering John's one-half interest in the property worth between $400,000 and $422,500. However, Kalikas also knew there were two loans against the property in the approximate amount of $671,000 at the time of the transfer, and knew John's interest was encumbered by his $200,000 separate loan, his share of the first mortgage, and his obligation to repay $30,000 to Mastrodimos, thus exhausting any equity John might have had in that property.

5

pursued against Mastrodimos in both his individual capacity and in his capacity as trustee for the Mastrodimos-O'Byrne Family Trust, alleged liability in connection with Mastrodimos's participation in the conveyance of the Camino Sandoval property, and alleged a claim against Mastrodimos in his individual capacity in connection with the conveyance of the Country Comfort stock.[3] Kalikas's claim for "concealment," alleged against Mastrodimos in his individual capacity, alleged Mastrodimos and Kalikas had a confidential relationship, and Mastrodimos breached the obligations he owed to Kalikas as the result of that relationship by failing to reveal to Kalikas that John was nearly bankrupt and would be unable to pay Kalikas's legal bills. Kalikas also alleged a claim against Mastrodimos in his individual capacity for intentional interference with contractual relations, alleging Mastrodimos knew of John's contract to pay Kalikas but interfered with that contract by assisting John to "become essentially judgment-proof" (by helping John divest himself of all assets) and by encouraging John to conceal those facts from Kalikas.

Mastrodimos, in both his individual capacity and as trustee of the Mastrodimos-O'Byrne Family Trust, joined with other defendants in moving for summary judgment on Kalikas's claims in the underlying lawsuit. The court granted summary judgment in favor of Mastrodimos in his capacity as trustee of the Mastrodimos-O'Byrne Family Trust (and summary adjudication in favor of Mastrodimos in his individual capacity) as to the fraudulent conveyance claim premised on the transfer by John of his interest in the

---

3       Kalikas also sued Mastrodimos in his capacity as trustee of the Country Comfort Trust.

residence, and granted summary adjudication in favor of Mastrodimos in his individual capacity as to the fraudulent conveyance claim premised on the transfer by John of the Country Comfort stock. The court also granted summary adjudication in favor of Mastrodimos on Kalikas's claim for intentional interference with contractual relations. The remaining claims against him went to trial. Mastrodimos ultimately prevailed on all of the remaining claims asserted by Kalikas against him.[4]

C. The Present Action

Mastrodimos, in his individual capacity and as trustee of the Mastrodimos-O'Byrne Family Trust, filed the present action against Kalikas, alleging a claim for malicious prosecution of the underlying action.[5] The present action alleged Kalikas filed and prosecuted the underlying action without probable cause and that his primary purpose

---

[4] At the trial in the underlying action, the court rejected Kalikas's claim for fraudulent concealment because (1) that claim required Kalikas to demonstrate he was involved in some type of transactional relationship with Mastrodimos, and Kalikas admitted in closing argument that no such relationship existed; and (2) Kalikas produced no evidence Mastrodimos made a partial disclosure of facts but then intentionally did not disclose other important facts, there was no evidence Mastrodimos either intentionally failed to disclose an important fact known only to him or actively concealed an important fact; to the contrary, Mastrodimos told Kalikas that John was "broke." As to the fraudulent conveyance claim based on the Country Comfort stock transaction, the court noted John's Country Comfort stock was secured by a valid lien (the note and pledge agreement), and Kalikas produced no competent evidence to challenge the validity of the note and pledge agreement, no evidence John received less than equivalent value in exchange for the transfer of the asset, and no evidence the transfer was made with the intent to hinder, delay or defraud creditors.

[5] Mastrodimos originally also pursued the malicious prosecution action in his capacity as trustee of the Country Comfort Trust, but subsequently dismissed his complaint on behalf of the Country Comfort Trust.

in filing and/or maintaining the underlying action was not to secure a proper adjudication of the claims he made but was instead an effort by him to extort compensation from Mastrodimos to which Kalikas knew he was not entitled.

The malicious prosecution action was tried to the court and, after receiving testimony and evidence, the court issued a statement of decision finding in favor of Mastrodimos and against Kalikas. The court found Kalikas's claim against Mastrodimos for intentional interference with contract lacked merit and was filed and maintained without probable cause. The court also found Kalikas's claim against Mastrodimos for fraudulent conveyance in connection with the transfer of the residence lacked merit and was filed and maintained without probable cause. It also found Kalikas's claim against Mastrodimos for fraudulent conveyance in connection with the transfer of the Country Comfort stock lacked merit and was filed and maintained without probable cause. The court also concluded Kalikas acted with the requisite malice.

The court awarded $94,635 as damages for the amounts spent to defend the underlying action. In making the award, the court recognized that in cases "where some, but not all[,] of the claims in an underlying action were brought without probable cause, attorney fees and costs may be apportioned; however, the burden of proving such apportionment rests with the Defendants as the parties [whose] malicious conduct created the problem. [Citation.] The Defendants provided no evidence regarding apportionment and therefor [sic] . . . [Mastrodimos is] entitled to $94,635 as damages . . . ."

Kalikas moved for a new trial.[6]  He argued the court's damages award was excessive because (1) it included attorney fees incurred after the court denied summary judgment on the fraudulent conveyance and concealment causes of action and (2) the award improperly included damages for those portions of attorney fees that should have been allocated to the defense of other defendants in the underlying action who were not parties to the malicious prosecution action.  In support of his new trial motion, Kalikas proffered a chart that he claimed showed the appropriate apportionment calculations that should have been made by the court, as well as a chart purporting to show the amount of fees (incurred by all defendants after the partial denial of the summary judgment/summary adjudication motion) Kalikas claimed were not recoverable as a matter of law.  The court denied his motion for new trial.  Kalikas timely appealed.

II

CLAIMS ON APPEAL

Kalikas asserts the court erred in holding him liable for malicious prosecution because, under *Roberts v. Sentry Life Insurance* (1999) 76 Cal.App.4th 375 (*Roberts*), he had probable cause to initiate and maintain the underlying lawsuit against Mastrodimos as a matter of law.  He alternatively argues that, even assuming the court correctly held

---

[6]    Kalikas also objected to the statement of decision but appears to raise no appellate issues concerning the court's rulings on his objections.

9

him liable for malicious prosecution, the court's damages award was contrary to the evidence.[7]

## III

## LEGAL FRAMEWORK

A. <u>Standards Applicable to Malicious Prosecution Actions</u>

The three primary elements necessary to establish liability for a claim asserting malicious prosecution are: (1) the malicious prosecution defendant initiated or maintained the underlying proceeding without probable cause; (2) the defendant acted with malice; and (3) the underlying action was pursued to a legal termination favorable to the malicious prosecution plaintiff. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965-969; *Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1028-1030.) "The tort of malicious prosecution . . . includes the act of 'continuing to prosecute a lawsuit discovered to lack probable cause.' [(Quoting *Zamos,* at p. 973.)] In determining the probable cause issue, the same standard applies 'to the continuation as to the initiation of a suit.' (*Id.* at p. 970.)" (*Kleveland v. Siegel & Wolensky, LLP* (2013) 215 Cal.App.4th 534, 551.)

---

7    Mastrodimos has moved to dismiss this appeal, and for sanctions, on the ground that Kalikas's failure to provide a reporter's transcript renders frivolous the claims he argues in the present appeal. (See *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 188-190.) Although our discussion below concludes Kalikas has not demonstrated reversible error in light of the law and the record provided, we cannot find that any reasonable attorney would agree, on the record provided, the appeal is so totally and completely without merit as to warrant dismissal and sanctions. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.) Accordingly, Mastrodimos's motion to dismiss and for sanctions is denied.

10

Although malicious prosecution claims have been characterized as "disfavored," our Supreme Court has also "cautioned that this 'convenient phrase,' i.e., the characterization of malicious prosecution as a *disfavored* cause of action, 'should not be employed to defeat a legitimate cause of action' or to 'invent[] new limitations on the substantive right . . . .' " (*Zamos v. Stroud, supra,* 32 Cal.4th at p. 966.)

When an underlying action pleads multiple cause of action, a defendant does not escape liability in a later malicious prosecution suit merely because one of the causes of action may have been filed and prosecuted with probable cause. (See, e.g., *Mabie v. Hyatt* (1998) 61 Cal.App.4th 581, 593-594 (*Mabie*).) To the contrary, "to withstand a suit in malicious prosecution, probable cause must support *each* cause of action." (*Videotape Plus, Inc. v. Lyons* (2001) 89 Cal.App.4th 156, 162; *Crowley v. Katleman* (1994) 8 Cal.4th 666, 679.) The existence of probable cause on one but not other claims, although not defeating entirely a malicious prosecution claim, remains relevant insofar as the damages award is calculated. Specifically, a defendant is entitled to attempt to reduce the damages award by showing that some of the damages sought by the malicious prosecution plaintiff should not be recoverable because a portion of the amount sought was attributable to defeating a claim for which probable cause did exist, but the *burden* of proving the proper apportionment of the damages demonstrated by the malicious prosecution plaintiff rests on the malicious prosecution defendant. (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 60 (*Bertero*); *Jackson v. Yarbray* (2009) 179 Cal.App.4th 75, 95-96.)

11

The court in *Mabie, supra,* 61 Cal.App.4th 581, summarizing the controlling

principles on the probable cause issue, explained at page 594:

> "[T]he controlling test for determining whether a claim is supported
> by probable cause . . . is whether, as an objective matter, 'any
> reasonable attorney would have thought the claim tenable.' [Quoting
> *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 886.]
> . . . Thus the question is whether the claim was 'objectively tenable'
> [*id*. at p. 882] or 'objectively reasonable' [*id*. at p. 883] . . . , in light
> of all relevant circumstances, including the factual circumstances
> peculiar to the specific case and the existing state of the law. 'The
> plaintiff . . . must have a reasonable belief in the validity of each of
> his theories; i.e., one reasonable ground will not excuse others which
> are without probable cause.' ([5 Witkin, Summary of Cal. Law (9th
> ed. 1988) Torts, § 447, p. 531]; see . . . *Leonardi v. Shell Oil Co.*
> (1989) 216 Cal.App.3d 547, 567, 568 . . . ['probable cause element
> of a malicious prosecution action requires an objective determination
> of the "reasonableness" of the defendant's prior lawsuit, i.e.,
> whether, on the basis of the facts known to the defendant, the
> institution of the prior action was legally tenable'; '[a] litigant will
> lack probable cause for his action if he relies upon facts which he
> has no reasonable cause to believe to be true, or seeks recovery upon
> a legal theory which is untenable under the facts known to him'].)"

Although a grant of summary judgment on the underlying claim in favor of the

defense does not establish that, at the time the action was initiated, the underlying

plaintiff lacked probable cause as a matter of law (*Jarrow Formulas, Inc. v. LaMarche*

(2003) 31 Cal.4th 728, 742), the entry of summary judgment on the underlying claim in

favor of the defense does provide support for the determination those claims lacked

probable cause. (*Slaney v. Ranger Ins. Co.* (2004) 115 Cal.App.4th 306, 320 (*Slaney*).)

Conversely, although the denial of a motion for summary judgment in the underlying

action "normally" provides support for the argument that the claim on which summary

judgment was denied was not lacking in probable cause (*Roberts, supra,* 76 Cal.App.4th

at p. 384), it is not conclusive "because there may be situations where denial of summary judgment should not irrefutably establish probable cause.  For example, if denial of summary judgment was induced by materially false facts submitted in opposition, equating denial with probable cause might be wrong.  Summary judgment might have been granted but for the false evidence."  (*Ibid.*)

B. <u>Standards of Appellate Review</u>

On appeal, we presume the trial court's judgment is correct, and indulge all intendments and presumptions in favor of its correctness (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133), and the appellant bears the burden of affirmatively demonstrating error.  (*Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 230.)  Because an appellant has the burden of overcoming the presumption of correctness, he or she must provide an adequate appellate record demonstrating the alleged error, and failure to do so requires that the issue be resolved against appellant.  (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296; accord, *Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1362 [judgment must be affirmed where appellant failed to present adequate record for review]*; Foust v. San Jose Construction Co., Inc., supra,* 198 Cal.App.4th at pp. 186-187 [argument on appeal forfeited where appellant included only selected excerpts from clerk's transcript and failed to include reporter's transcript or exhibits, preventing meaningful review].)

When, as here, the appellant on appeal omits the record of the oral proceedings, he or she is barred from claiming the evidence was insufficient to support the judgment or raising any other evidentiary issues.  (*Aguilar v. Avis Rent A Car System, Inc.* (1999) 21

13

Cal.4th 121, 132; *Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1178; *Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324.) When an appellant has elected to proceed with an appendix in lieu of the clerk's transcript (Cal. Rules of Court, Rule 8.124(a)), as has Kalikas, such an appendix is "the functional equivalent of a clerk's transcript. When an appeal is submitted on a record of this kind, the reviewing court *conclusively* presumes the evidence was ample to sustain the trial court's factual findings. The only question is whether the findings support the judgment." (*Construction Financial v. Perlite Plastering Co.* (1997) 53 Cal.App.4th 170, 179 (*Construction Financial*).) Stated differently, in an "appeal based on a clerk's transcript, every presumption is in favor of the validity of the judgment and all facts consistent with its validity will be presumed to have existed. The sufficiency of the evidence is not open to review. The trial court's findings of fact and conclusions of law are presumed to be supported by substantial evidence and are binding on the appellate court . . . ." (*Bond v. Pulsar Video Productions* (1996) 50 Cal.App.4th 918, 924.)

## III

## ANALYSIS

Kalikas raises two claims on appeal. In his first claim, he argues the court erred as a matter of law in finding him liable for maliciously prosecuting *any* of the claims he

filed and maintained in the underlying action. In his second claim, he argues the damages award was excessive.[8] We address his claims seriatum.

A. <u>Kalikas's Challenge to the Liability Determination</u>

Kalikas argues he showed probable cause to pursue each of the claims he filed and maintained in the underlying action, and therefore asserts the liability determination must be reversed.

Mastrodimos obtained summary judgment in the underlying action on numerous claims. Although that *alone* does not establish as a matter of law a lack of probable cause or malice (*Jarrow Formulas, Inc. v. LaMarche, supra,* 31 Cal.4th at p. 742), the entry of summary judgment on the underlying claim in favor of the defense does provide *support* for the determination by the trial court in this action that those claims lacked probable cause. (*Slaney, supra,* 115 Cal.App.4th at p. 320.)

Kalikas argues that, under *Jarrow*, merely because the court granted summary judgment as to some of his claims, "it does not follow that those claims lacked probable cause when filed, based upon the information known to [Kalikas] at the time he filed his action" because "[f]or example, as to the transfer of John's one[-]half interest in the Camino Sandoval property, the court ruled that the transfer could not be fraudulent because, based upon the evidence presented, there was no equity in John's one[-]half interest. [Citation.] This is exactly the situation envisioned by *Jarrow* . . . , where the claim is tenable when filed, but subsequent evidence revealed that the claim lacked

---

8    Kalikas's "excessive damages" claim asserts three different sub-arguments, which we examine below.

evidentiary . . . support." However, Kalikas's argument under *Jarrow* assumes he did *not* know the actual facts showing a lack of probable cause (i.e. of John's lack of equity in the Camino Sandoval property) when he filed the action, and only lost on summary judgment as the result of subsequently discovered facts. His argument ignores the trial court's findings of fact in the present action (see fn. 2, *ante*): that Kalikas learned the facts (i.e. John had exhausted any equity in the Camino Sandoval property before he conveyed it) *while representing John during the Clapp litigation,* which was before (not after) Kalikas filed the underlying action. Because we conclusively presume the evidence supports that determination (*Construction Financial, supra,* 53 Cal.App.4th at p. 179), Kalikas knew at the time he filed the underlying action that the facts showed his claim for fraudulent conveyance lacked probable cause. Accordingly, his argument under *Jarrow* is misplaced, and the trial court's determination that Kalikas lacked probable cause to pursue a claim for fraudulent conveyance against Mastrodimos (in either his individual capacity or in his capacity as trustee of the Mastrodimos-O'Byrne Family Trust) in connection with the transfer of the Camino Sandoval property must be affirmed.

We conclude, for similar reasons, that we must affirm the trial court's findings that Kalikas lacked probable cause to initiate and/or maintain other claims in the underlying action. (*Mabie, supra,* 61 Cal.App.4th at p. 594 [probable cause must support each claim prosecuted in underlying action, and probable cause for one claim does not insulate defendant from liability for initiating or maintaining claims for which no probable cause existed].) For example, the trial court here found Kalikas's claim against Mastrodimos (in his individual capacity) for fraudulent conveyance of the Country Comfort stock

16

lacked probable cause. Certainly, Mastrodimos's success in obtaining summary adjudication on that claim provides support for the determination of the lack of probable cause as to that claim (*Slaney, supra,* 115 Cal.App.4th at p. 320), and the trial court below also found Kalikas had learned the relevant facts concerning the Country Comfort stock transaction during the Clapp litigation, not after the underlying action was filed, rendering *Jarrow* inapposite. Accordingly, the trial court's determination Kalikas lacked probable cause to pursue a claim for fraudulent conveyance against Mastrodimos individually in connection with the transfer of the Country Comfort stock must be affirmed. The trial court also found Kalikas's claim against Mastrodimos for intentional interference with contract lacked probable cause, which was again supported (1) by the grant of summary adjudication against Mastrodimos on that claim in the underlying action (*Slaney,* at p. 320), and (2) by the fact that Kalikas articulated no factual basis for that claim (in either the underlying action or in the present action) other than that, during the meeting at which Kalikas asked John to relieve Kalikas as his attorney in the Capp action, Mastrodimos "nodded his head" after he and John had risen to leave that meeting. Where a party repeatedly concedes it neither had nor developed any evidence to support a claim, a determination of lack of probable cause to initiate and maintain that claim is proper. (Cf. *Mabie, supra*, 61 Cal.App.4th at p. 597 ["It is undisputed that Mrs. Hyatt and her attorneys never had any evidence to support the fraud, conspiracy, malice and punitive damage claims they prosecuted. They admitted this in depositions, on the record in open court, and in responses to requests for admission. This record clearly establishes that the attorneys lacked probable cause . . . ."].)

17

Kalikas next asserts that, under *Roberts, supra*, 76 Cal.App.4th 375, denial of a motion for summary judgment in the underlying action, *as a matter of law*, demonstrates probable cause as to those claims, and therefore he asserts any finding to the contrary as to some of his underlying claims must be reversed. We believe Kalikas misreads *Roberts*.9 First, although *Roberts* does contain broad language apparently supporting that contention, other courts seem to have expressed a contrary view. (See, e.g. *Hufstedler, Kaus & Ettinger v. Superior Court* (1996) 42 Cal.App.4th 55, 69 ["the denial of a motion for summary judgment in the underlying action *does not itself* preclude a subsequent malicious prosecution claim [italics added]"].) More importantly, Kalikas overstates the actual analysis of *Roberts,* because *Roberts* characterized the impact of a denial of a defendant's summary judgment motion as providing "persuasive evidence," or as being a "reliable indicator," that the underlying action was brought with probable cause. (*Roberts, supra,* 76 Cal.App.4th at p. 383.) Reliable or persuasive evidence is not the equivalent of conclusive evidence. Moreover, *Roberts* itself cautioned it was *not* holding that denial of summary judgment was *conclusive* on the issue of probable cause, explaining it "conclude[d] that denial of defendant's summary judgment in an earlier case normally establishes there was probable cause to sue, thus barring a later malicious

---

9    Although we reject Kalikas's reading of and reliance on *Roberts*, we would affirm the judgment for the reasons stated below (see part III(B)(2) & fn. 10, *post*) even if *Roberts* did undermine some of the trial court's rulings on probable cause. (*Mayflower Ins. Co. v. Pellegrino* (1989) 212 Cal.App.3d 1326, 1332.*rooks v. CarMax Auto Superstores California, LLC* (2016) 246 Cal.App.4th 973, 980 [even where statement of decision reveals the legal basis for judgment was incorrect, appellate court will affirm the judgment as long as any other correct legal reason exists to sustain the judgment].)

18

prosecution suit.  [¶]  We say 'normally' rather than 'conclusively' because there may be situations where denial of summary judgment should not irrefutably establish probable cause.  For example, if denial of summary judgment was induced by materially false facts submitted in opposition, equating denial with probable cause might be wrong.  Summary judgment might have been granted but for the false evidence."  (*Id*. at p. 384.)

The above cautionary caveat has potential application here.  For example, on Kalikas's claim in the underlying action against Mastrodimos for concealment,  Kalikas opposed the motion for summary judgment by averring (in his declaration in opposition to the summary judgment motion) that neither Mastrodimos nor John revealed that John lacked the financial resources to pay Kalikas's legal bills, and the court in the underlying litigation therefore denied summary adjudication on this claim because Kalikas's declaration raised a triable issue of fact on his claim that Mastrodimos concealed information he had a duty to reveal.  However, at trial in the malicious prosecution action, the court found that at their initial meeting Mastrodimos *did* tell Kalikas that John was " 'broke,' " which a trier of fact could conclude was the exact opposite of what Kalikas averred in his declaration in opposition to summary adjudication of the concealment claim.  This circumstance thus raises *Roberts's* own caveat that, "where denial of summary judgment was induced by materially false facts submitted in opposition, equating denial with probable cause might be wrong.  Summary judgment might have been granted but for the false evidence."  (*Roberts, supra,* 76 Cal.App.4th at p. 384.)  For all of these reasons, we reject Kalikas's assertion that the trial court's

19

determination on lack of probable cause for the claims asserted against Mastrodimos in the underlying action was erroneous as a matter of law.

B. Kalikas's Challenges to the Damages Award

Kalikas challenges the amount of the damages award, and raises three appellate arguments that are variations on the single theme: Mastrodimos's damages should have been subjected to an apportionment and an offset, and reduced by such apportionment and offset. His first appellate argument is that, even if *some* of the claims he filed and maintained in the underlying action were maliciously prosecuted and supported an award of damages in defending against those claims, others of the claims were *not* maliciously prosecuted as a matter of law under *Roberts* and hence fees incurred to defend against these latter claims were not recoverable damages. Second, he asserts some of the damages were composed of fees to defend parties who did not join Mastrodimos as plaintiffs in the malicious prosecution action, and therefore the nonparties' share of the fees should not have been included in the damages award. Third, he argues that a portion of the fees had already been recovered by Mastrodimos from a third-party bonding company, and therefore this amount should have been offset against Mastrodimos's damages. Before explaining our reasons for rejecting each of Kalikas's claims, we recap the applicable legal standards governing both apportionment and appellate review.

(1) *Legal Standards*

When the underlying action involves multiple claims, some of which lack probable cause but also involve tenable claims, the malicious prosecution defendant is entitled to attempt to reduce the damages award by showing that some of the damages

20

sought by the malicious prosecution plaintiff should not be recoverable because a portion of the amount sought was attributable to defeating a claim for which probable cause did exist. However, the burden of proving the proper apportionment of the damages demonstrated by the malicious prosecution plaintiff rests on the malicious prosecution defendant. (*Crowley v. Katleman, supra,* 8 Cal.4th at p. 690.) The allocation of that burden is appropriate because " 'it would seem almost a mockery to hold that, by uniting groundless accusations with those for which probable cause might exist, the defendants could thereby escape liability, because of the injured party's inability to divide his damages between the two with delicate nicety.' " (*Bertero, supra,* 13 Cal.3d at p. 56.) "To place the burden on the injured party rather than upon the wrongdoer would, in effect, clothe the transgressor with immunity when, because of the interrelationship [between the claims unsupported by probable cause and those supported by probable cause], the injured party could not apportion his damages." (*Id*. at p. 60.)

"A reviewing court must uphold an award of damages whenever possible [citation] and all presumptions are in favor of the judgment [citations]." (*Bertero, supra,* 13 Cal.3d at p. 61.) An appellant has the burden of overcoming that presumption of correctness by providing an adequate record that affirmatively demonstrates error (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140-1141), and when the appellate record contains only an appendix and has no reporter's transcript, "the reviewing court *conclusively* presumes the evidence was ample to sustain the trial court's factual findings. The only question is whether the findings support the judgment." (*Construction Financial, supra,* 53 Cal.App.4th at p. 179.)

21

(2) *Analysis*

The trial court found Mastrodimos had shown, by his testimony and through submitting the billings for attorney fees, that he spent $94,635 to defend the underlying action, and Kalikas "provided no evidence regarding apportionment." Because we *conclusively* presume the evidence was sufficient to sustain this factual finding, we are left only to evaluate whether that finding supports the judgment. (*Construction Financial, supra,* 53 Cal.App.4th at p. 179.) Under *Bertero*, the finding that Kalikas had not met his burden of demonstrating an appropriate allocation is alone sufficient to support a judgment awarding all of the demonstrated fees.[10]

Kalikas contends, however, the court "ignored the fact" that an exhibit introduced at trial (Exhibit 46) contained itemized billing statements from Mastrodimos's attorney in the underlying action showing "fees incurred both before and after the denial of summary judgment/summary adjudication, *and how those fees should be apportioned*." Although Exhibit 46 does show the *chronology* of the attorneys' services rendered to Mastrodimos to defeat the underlying action, it contains nothing showing how the amounts charged should be apportioned *among* the claims filed and/or maintained without probable cause in the underlying action, and therefore the trial court's finding that Kalikas "provided no

---

10    Kalikas's failure to meet his burden of showing the appropriate allocation requires that we affirm the judgment even if we accepted his expansive reading of *Roberts, supra*, 76 Cal.App.4th 375. That is, because Mastrodimos showed his total damages incurred in defending the entire action, and at least some of those claims lacked probable cause, Kalikas's failure to carry his burden of showing what portion of the total fees was allocable to defending against claims brought with probable cause supported entry of judgment for the entire amount (*Jackson v. Yarbray, supra,* 179 Cal.App.4th at pp. 95-96), which requires us to affirm the judgment.

22

evidence regarding apportionment" is not undermined by that exhibit. More importantly, Kalikas's argument regarding Exhibit 46 rests on a predicate argument: that services rendered after the denial of the summary judgment/summary adjudication motion were necessarily rendered to defeat claims for which probable cause existed because such denial *necessarily* established probable cause as to those claims under *Roberts*. We have previously explained why we conclude that predicate is fallacious, and that conclusion in turn deprives Kalikas's argument regarding Exhibit 46 of any persuasive force.

Kalikas next asserts that awarding damages measured by all of the fees incurred to defeat the underlying action was contrary to the evidence at trial because the award should have been limited to the fees incurred by the two plaintiffs who pursued the present action (Mastrodimos in his individual capacity and as trustee of the Mastrodimos-O'Byrne Family Trust) and should have excluded the fees incurred by the other two defendants in the underlying action. Specifically, Kalikas asserts (1) the evidence at trial (Exhibit 46) showed Mastrodimos (in his individual capacity and as trustee of the Mastrodimos-O'Byrne Family Trust) incurred only $24,794.14 in attorney fees prior to the ruling on the summary judgment/summary adjudication motion, and (2) Kalikas "provided evidence at trial that there was no agreement among the [four defendants in] the underlying action that attorney fees were to be handled in any other way other than an equal split of fees, i.e., that each of the four defendants would therefore be responsible for their proportionate share of fees." However, in support of his first proposition, the only "evidence" he cites from the appellate record before us is Exhibit 46, but our review of that exhibit shows it is entirely silent on the proposition he asserts.

23

In support of his second proposition, he cites only a trial brief and declaration he filed in support of his motion for new trial, which included (as exhibits) items apparently not introduced at trial and purporting to "show" the four defendants agreed to equally share in the attorney fees in the underlying action. Although Kalikas's filings in connection with a new trial motion might be germane to assessing whether the court abused its discretion in denying that motion, Kalikas cites no law suggesting such posttrial filings may be introduced to show what occurred at the underlying trial. (Cf. *Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 153-154 [in appeal based on clerk's transcript appellate court rejects appellants' effort to premise reversal based on evidence attached to trial briefs].) Instead, his claim that the trial evidence compelled the conclusion that each of the four defendants agreed to be responsible for their proportionate share of fees in defending the underlying action is barred because he has elected to forgo a reporter's transcript.[11] (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992 ["an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence"].)

---

[11] Kalikas attempts to avoid the preclusive impact of the absence of a reporter's transcript by asserting that California Rules of Court, rule 8.130(a)(4) permits an appellant to elect to proceed without a reporter's transcript. Although that correctly states the law, California Rules of Court, rule 8.120(b) *requires* a reporter's transcript on appeal if "an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court." Although Kalikas (in his reply brief) asserts "the issue of apportionments was raised at trial . . . [because] there was extensive questioning of [Mastrodimos] on this issue," that is precisely the kind of "issue which requires consideration of the oral proceedings in the superior court," and we reject his assertion that he may forgo a reporter's transcript but nevertheless raise the issue merely because he filed a declaration in support of a new trial motion that contains his characterization of the trial evidence or that attaches exhibits apparently never introduced at trial.

Kalikas finally asserts the damages award was excessive because he "presented evidence at the trial" that a portion of the fees Mastrodimos spent in defending the underlying action had already been recovered from a third-party bonding company, and therefore this amount should have been offset against Mastrodimos's damages. However, his claim that the trial evidence compelled this offset is barred because he has elected to forgo a reporter's transcript. (*Estate of Fain, supra,* 75 Cal.App.4th at p. 992.) For these reasons, we reject Kalikas's claim that the damages award was unsupported by the evidence.

DISPOSITION

The judgment is affirmed. Mastrodimos is entitled to costs on appeal.

McDONALD, J.

WE CONCUR:

BENKE, Acting P. J.

IRION, J.

25